SWIFT, Judge.
This is an appeal from a trial court judgment awarding plaintiff property damages sustained in a rear-end collision allegedly caused by defendants’ negligence.
The facts are relatively undisputed.
The accident occurred on May 23,1979, at about 3:15 p. m. on Louisiana 10 just east of Oakdale. A Ford pickup truck owned by Boise Southern Company and driven by Boise’s employee, Charles Fuselier, was proceeding eastward. Following the pickup truck was a Chevrolet tractor-truck pulling a low-boy trailer. This rig was owned by Security Timber and Land Company (Security) and driven by its employee, William H. Sampsel, in the course of his employment. Sampsel was following Fuselier to deliver a load of lumber to the latter’s home. Traveling behind both of these trucks was a car and a Ford butane tank truck owned by Reed, Inc. and driven by Anthony D. Reed.
As the trucks began to negotiate a curve in the highway Reed began to pass the automobile driven by Odlie Strother and the two preceding trucks in a no-passing zone. Fuselier observed this maneuver in his rear view mirror. He also saw an unidentified automobile approaching in the opposite lane of travel. Fearing that the butane truck would not have a sufficient length of time in which to pass his pickup and the trailer truck, Fuselier removed his foot from the accelerator and his velocity decreased from about 40 to approximately 25 miles per hour when he was struck in the rear by Security’s truck. He testified that he was fixing to apply his brakes slowly and pull over to the right shoulder to avoid an accident but he did not recall actually putting on the brakes then.
*176 In the meantime the approaching vehicle pulled halfway into the ditch on his right and the butane truck passed between the pickup and the automobile and continued on Highway 10.
Mr. Sampsel was thought to be in Alaska and did not testify. However, he told Mr. Fuselier after the accident “that he was occupied looking” at the truck trying to pass and was “worried” as he didn’t know what was going to happen. Fuselier said Sampsel had apparently seen the oncoming car also.
The investigating police officer testified the brakes on the trailer had not been hooked up and Sampsel told him that when he put on the brakes of his tractor the “load pushed him down the road” to where he hit the Fuselier truck. Sampsel’s unit traveled approximately 222 feet from the point of impact before stopping.
Security filed this suit against Reed, Inc. and its driver for damages to its truck and lumber. The principal defense is that plaintiff’s driver was contributorily negligent.
After trial on the merits the judge ruled for the plaintiff and opined that a sudden emergency arose when Reed attempted the illegal passing maneuver which excused Sampsel’s failure to react because the dangerous situation diverted his attention. The trial judge stated:
“Under these circumstances a momentary lapse of attention is possible. It is also significant that Fuselier did not apply his brakes or give any signal that he was slowing down suddenly. The court does not believe that the failure to hook up the trailer brakes was the cause of the accident.”
Defendants contend that the trial court was manifestly in error in applying the rule of sudden emergency to the facts of this case and that recovery is barred by the contributory negligence of Sampsel and also Security. We agree.
The doctrine of sudden emergency has been stated by our supreme court in Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (La.1972), as follows:
“One who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence.”
In Dick v. Phillips, 253 La. 366, 218 So.2d 299, 302 (La.1969) the court said:
“Although Phillips invokes the doctrine of sudden emergency to exculpate himself from a charge of negligence, the doctrine is not available to him. The rule of sudden emergency cannot be invoked by one who has brought that emergency on himself by his own wrong or who has not used due care to avoid it. The sudden emergency doctrine is applicable to the standard of conduct of a motorist after an emergency has arisen, it does not apply to lower the standard of care required of motorists before the emergency occurs. 2 Blashfield, Automobile Law and Practice § 102.28 (3rd ed. 1965). See also Noland v. Liberty Mutual Insurance Company, 232 La. 569, 94 So.2d 671 (1957).”
The doctrine is further qualified as follows:
“Parenthetically we note that the defense of sudden emergency is not available if the motorist fails to exercise the degree of care that a prudent person would use to extricate himself from the situation.”
Potts v. Hollier, 344 So.2d 70, 71 (La.App. 4 Cir. 1977).
Thus, while a sudden emergency will excuse the failure to exercise a choice that in light of after events might not have been the best and may otherwise have been negligent, the motorist must still use the care that a prudent person would to extricate himself from the situation. And, of course, the doctrine does not apply to an emergency brought about by the driver pleading same. Nor does it lower the stan *177 dard of care required of motorists before the emergency occurs.
It is obvious that Mr. Reed was patently negligent in passing the preceding vehicles in a no-passing zone. However, it is equally clear that Mr. Sampsel was contributorily negligent unless a proper sudden emergency existed.
The primary duty imposed on a motorist in the safe operation of a vehicle is to keep a sharp lookout in the direction in which he is proceeding in order to discover the presence of a possible danger. Weber v. Phoenix Assurance Company of New York, 273 So.2d 30 (La.1973). And a motorist is presumed to have seen what he should have seen. Baumgartner v. State Farm Mutual Automobile Insurance Company, 356 So.2d 400 (La.1978). Also, a motorist is presumed to have been negligent if he collides with the rear end of a vehicle preceding his vehicle. Jones v. Meinke, 357 So.2d 838 (La.App. 4 Cir. 1978); Tidwell v. Ocean Systems, Inc., 356 So.2d 466 (La.App. 1 Cir. 1977).
La.R.S. 32:341 requires a truck and trailer, as was driven by Sampsel, to possess working, separate brake systems. A violation thereof not only gives rise to a presumption of negligence, but the owner and operator of the vehicle with faulty brakes are strictly liable to a party whose automobile is rear-ended thereby. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The Fuselier vehicle was in plain view ahead of Sampsel. It was not stopped suddenly, but instead its speed was simply reduced from about 40 miles per hour to approximately 25 miles per hour at impact without application of brakes by the driver releasing the accelerator. The only excuse appearing in the record for Sampsel’s failure to observe the reduction in speed of the vehicle ahead of him and attempt to avoid the accident was that he was looking at the passing Reed truck and the approaching automobile and paying no attention whatsoever to the truck he was following.
The same explanation was rejected by the Court of Appeal, Fourth Circuit, in regard to a rear-end collision in Seals v. Allstate Ins. Co., 370 So.2d 691 (La.App. 4 Cir. 1979), writ refused, 373 So.2d 531 (La.1979). Said the court:
“Defendant Allstate cites the sudden emergency doctrine as a basis to absolve its insured of liability. However, we do not think that doctrine applies here. Hendrichson saw the phantom car about three or four car lengths before he noticed it pulling out in front of him, at which time he changed lanes because he felt he could not stop before hitting the phantom car. He testified there was no obstruction blocking his view of Seals’ car, but that he did not notice Seals’ brake lights because he was concentrating on the phantom car in the right lane. Under the circumstances, although we sympathize with his plight, we do not feel he exercised the degree of care required of a prudent motorist.” (Emphasis added.)
The emergency did not occur suddenly in this instance. Instead, we are convinced that if Sampsel had been maintaining a proper lookout and his unit was equipped with adequate brakes there was sufficient time for him to have reduced his speed and avoided this accident after he became aware of the dangerous passing movement of the Reed vehicle. His failure to do so falls short of the degree of care that a reasonable and prudent person would exercise to extricate himself from the situation under the circumstances. Consequently, his contributory negligence in these respects is not expunged by the sudden emergency doctrine.
Furthermore, both Sampsel’s negligence and that of Security in failing to equip the trailer with adequate brakes occurred long before any emergency arose and undoubtedly contributed to the accident. It is obvious to us that the speed of a tractor-trailer unit equipped with proper brakes and following another vehicle at a proper distance could be reduced sufficiently by normal operation to avoid a collision with the preceding vehicle when the latter’s speed was merely reduced by its driver releasing the *178 accelerator without applying the brakes. As pointed out above, a sudden emergency does not lower the standard of care required of motorists before it arises. Nor does it relieve them of the consequences of such antecedent negligence.
For the foregoing reasons, the judgment of the district court is reversed and judgment is rendered herein in favor of the defendants and against the plaintiff dismissing the latter’s suit. The costs of court, including this appeal, are taxed to plaintiff-appellee.
REVERSED AND RENDERED.